## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Regina Renee Coleman, | ) | C/A No. 0:22-392-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v. | ) | **FROM THE SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Kilolo Kijakazi, Acting Commissioner of the | ) | **SOCIAL SECURITY BENEFITS** |
| Social Security Administration, | ) | |
| | ) | ☒  Affirmed |
| Defendant. | ) | ☐  Reversed and Remanded |
| | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

## Part I—Plaintiff seeks:

☒        Supplemental Security Income ("SSI"):  Plaintiff's age at filing:  <u>42</u>

☒        Disability Insurance Benefits ("DIB"):  Date last insured:  <u>June 30, 2020</u>

☐        Other:

Application date:  <u>October 12, 2021</u>

Plaintiff's Year of Birth:  <u>1976</u>

Plaintiff's alleged onset date:  <u>November 1, 2016</u>

## Part II—Social Security Disability Generally

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v.

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  <u>June 28, 2021</u>

In applying the requisite five-step sequential process, the ALJ found:

Step 1:          Plaintiff was engaged in substantial gainful activity during the relevant time period:
                 ☐ Yes  ☒ No

Step 2:          ☒ Plaintiff has the following severe impairments:
                 <u>Degenerative disk disease of the lumbar spine with scoliosis, chronic pain syndrome, left eye blindness, bursitis, and obesity</u>

                 ☐ Plaintiff does not have a severe impairment.

Step 3:          ☒ Plaintiff's impairments do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:          Plaintiff's Residual Functional Capacity is as follows:

                 <u>[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping; occasional kneeling and crouching; never crawling; avoiding concentrated exposure to hazards; and . . . she is limited to jobs that require only occasional depth perception.</u>

                 ☒ Plaintiff could return to her past relevant work, as follows:

| Job Title | DOT Number | Exertion Level | Skill Level |
|-----------|------------|----------------|-------------|
| Housekeeper | 323.687-014 | Light | SVP 2 |
| Day care worker/nursery school attendant | 359.677-018 | Light | SVP 4 |

Step 5:          ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

                 ☒ In addition to Plaintiff's past relevant work, there are other jobs in the national economy that Plaintiff can perform, as follows:

| Job Title | DOT Number | Exertion Level | Skill Level | Approx. Number of National Jobs |
|-----------|------------|----------------|-------------|----------------------------------|
| Garment Sorter | 222.687-014 | Light | Unskilled; SVP 2 | 150,000 |
| Fountain Server | 319.474-010 | Light | Unskilled; SVP 2 | 25,000 |
| Garment Folder | 798.687-066 | Light | Unskilled; SVP 2 | 45,000 |

Date of Appeals Council decision: <u>December 8, 2021</u>

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>see also</u> 42 U.S.C. § 405(g); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. <u>See Brown v. Comm'r Soc. Sec. Admin.</u>, 873 F.3d 251, 267 (4th Cir. 2017); <u>Myers v. Califano</u>, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig</u>, 76 F.3d at 589; <u>see also Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019); <u>Pearson v. Colvin</u>, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." <u>Biestek</u>, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Craig</u>, 76 F.3d at 589; <u>see also Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. <u>Blalock</u>, 483 F.2d at 775.

## Part V—Issues for Judicial Review

i.      The ALJ erred in failing to properly develop the record regarding Ms. Coleman's psychiatric impairments.

ii.     The ALJ failed to properly address Ms. Coleman's credibility.

iii.    The ALJ erred in failing to properly assess Ms. Coleman's residual functional capacity.

iv.     The ALJ erred in relying on inconsistent testimony from the Vocational Expert.

(Pl.'s Br. at 5, 7, 8, 9, ECF No. 10 at 5, 7, 8, 9.)

## Oral Argument:

☐ **Held on _____.**

☒ **Not necessary for disposition.**

## Summary of Reasons

Plaintiff graduated from high school, attended some college, and previously worked as a housekeeper, daycare worker/nursery school attendant, office assistant, telephone salesperson, cashier, desk clerk, and laundry attendant. (Tr. 64-65, 423, 433, 496.) Plaintiff has been seeking social security benefits since at least 2014. (<u>See</u> Tr. 98-99 (September 13, 2017 ALJ hearing decision referencing a January 21, 2014 hearing decision)). In her current application, Plaintiff

alleged disability due to anxiety, depression, scoliosis, back and neck pain, and blindness in her left eye. (Tr. 422.) She claimed she could not work because her pain prevented her from standing or sitting for prolonged periods and her medications made her unable to function. (Tr. 441, 464.) After Plaintiff's claims were denied initially, on reconsideration, and by written decision after a hearing, the Appeals Council remanded for further consideration of Plaintiff's vision impairment, the state agency consultants' opinions, the severity of Plaintiff's medically determinable impairments, and Plaintiff's maximum RFC, and to obtain supplemental evidence from a VE. (Tr. 203-16 (March 23, 2020 ALJ hearing decision), 223-24 (October 21, 2020 Appeals Council order)). Plaintiff received a second hearing on June 1, 2021, after which her claims were again denied by written decision, which was affirmed by the Appeals Council. (Tr. 35-57 (hearing transcript), 15-28 (hearing decision), 1-3 (Appeals Council denial)). Plaintiff now alleges the ALJ erred in her assessment of Plaintiff's psychiatric impairments, subjective symptoms, and RFC, and that she relied on inconsistent testimony from the VE.

A.      **Consideration of Psychiatric Impairments**

Plaintiff argues the ALJ failed to properly consider her psychiatric impairments by failing to further develop the record, ignoring opinion evidence from the state agency consultants, and failing to follow the required techniques for assessing psychiatric impairments. (Pl.'s Br. at 5-8, ECF No. 10 at 5-8.) The Commissioner asserts the ALJ complied with the applicable regulations, had no duty to further develop the record, and reasonably found Plaintiff's anxiety and depression non-severe. (Def.'s Br. at 8-13, ECF No. 12 at 8-13.) Alternatively, the Commissioner argues any error related to Plaintiff's psychiatric impairments was harmless. (Id. at 12-13, ECF No. 12 at 12-13.)

Regarding Plaintiff's claim that the ALJ failed to properly develop the record, it is the claimant's duty to introduce evidence of impairments through the first four steps of the sequential process.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); 20 C.F.R. §§ 404.1512(a), 416.912(a) ("you have to prove to us that you are blind or disabled"); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). However, an ALJ "has a duty to explore all relevant facts and inquire in the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). "The key consideration is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the claimant's impairment." Lehman v. Astrue, 931 F. Supp. 2d 682, 692–93 (D. Md. 2013) (quoting Craft v. Apfel, No. 97-2551, 1998 WL 702296 (4th Cir. 1998)).  Further, an "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case," Lehman, 931 F. Supp. 2d at 693, particularly when the claimant is represented by counsel.  See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

"Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted).  To show prejudice, a claimant must show the Commissioner's decision "might reasonably have been

different had that evidence been before him when his decision was rendered." King v. Califano, 599 F.2d 597, 499 (4th Cir. 1979).

Here, Plaintiff had two administrative hearings and was represented by counsel at both. (Tr. 35, 58.)  At each hearing, Plaintiff's attorney informed the ALJ the record was complete regarding any mental health treatment.  (See Tr. 39-40, 60.)  The ALJ reasonably relied on counsel's representation.  See Hawkins, 113 F.3d at 1167.  In addition, even if the ALJ was required to inquire further concerning Plaintiff's psychiatric impairments, Plaintiff does not allege specific limitations resulting from her anxiety and depression or otherwise explain how further development would alter the Commissioner's analysis and thus fails to show how any error was prejudicial.

Next, Plaintiff argues the ALJ "erroneously determined that [she] did not suffer from a severe psychiatric impairment" at step two and "failed to follow the required techniques" for assessing mental impairments.  (Pl.'s Br. at 5-7, ECF No. 10 at 5-7) (citing 20 C.F.R. § 404.1520(a)).

Step two is a threshold determination of whether a claimant has a severe impairment that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Basic mental work activities include functions like understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision and co-workers; and dealing with changes in a work setting.  20 C.F.R. §§ 404.1522(b)(3)-(6), 416.922(b)(3)-(6).

At step two, the ALJ found Plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore,

nonsevere." (Tr. 18.) She explained her finding was based on Plaintiff's own reports that her anxiety was well-controlled with medication, Plaintiff's lack of formal psychiatric treatment or hospitalization, records and opinion evidence from Plaintiff's treating physician, and consideration of the statutory technique for evaluating mental disorders. (See id. at 18-19.) The ALJ's explanation included a full discussion of the paragraph B criteria and her findings of mild limitations in each of the four broad functioning areas. (Id. at 19) (citing 20 C.F.R. §§ 404.1520(a), 416.920(a)). Plaintiff does not contest any of these findings, arguing instead that the ALJ failed to perform the required technique at all. (See Pl.'s Br. at 6-7, ECF No. 10 at 6-7.) Having performed the technique and having found only mild limitations, the ALJ properly determined Plaintiff's psychiatric impairments were not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment is not severe").

Finally, Plaintiff argues the ALJ "ignored" opinions from the state agency psychological consultants. This, too, is simply not true. (See Tr. 25-26 (explicitly considering the state agency consultants' opinions)). If Plaintiff means to argue the ALJ improperly weighed the state agency consultants' opinions, this argument also fails.

Under the federal regulations applicable to Plaintiff's application, ALJs no longer "give any specific evidentiary weight . . . to any medical opinion(s)," but must consider and evaluate the persuasiveness of all opinion evidence based on its supportability and consistency, the source's relationship with the claimant and specialization, and other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how they were considered. Id. The ALJ may, but is not required to, explain how she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2)-(3),

416.920c(b)(2)-(3). An evaluation of any medical opinion must be supported by substantial evidence.

The state agency psychological consultants at both levels of review found Plaintiff's depression and anxiety severe. (Tr. 127, 144, 165, 183.) Unlike the ALJ, the state agency consultants found Plaintiff moderately limited in her ability to concentrate, persist, or maintain pace. (Id.) The only apparent basis for this finding is a medical opinion from Plaintiff's primary care physician, Dr. Fletcher Derrick. (See Tr. 127-28, 144-45, 166, 184 (summarizing relevant records of mostly normal mental findings other than Dr. Derrick's indication that Plaintiff "has difficulty focusing" and finding Dr. Derrick's opinion persuasive)). However, the state agency consultants found Plaintiff capable of performing simple tasks. (See id.)

Dr. Derrick completed a mental status medical opinion in January 2019, stating Plaintiff had been diagnosed with anxiety and depression and that medication had helped her condition. (Tr. 533.) He had not recommended Plaintiff pursue psychiatric care. (Id.) Dr. Derrick opined Plaintiff was fully oriented and exhibited slowed thought process, appropriate thought content, worried/anxious mood and affect, adequate attention and concentration, and adequate memory. (Id.) Dr. Derrick opined further that Plaintiff could adequately complete basic activities of daily living, relate to others, and complete simple, routine tasks but would have poor ability to complete complex tasks due to difficulty focusing. (Id.) The ALJ found Dr. Derrick's opinion "persuasive in finding the claimant's anxiety and depression is nonsevere, particularly in light of him not recommending psychiatric treatment and the claimant's lack of formal mental health treatment and reported improvement in symptoms on her medication regimen." (Tr. 19.)

Conversely, the ALJ found the state agency consultants' opinions that Plaintiff's mental impairments were severe to be unpersuasive, reasoning:

While the claimant takes medication for anxiety and depression, the medication is prescribed by her primary care provider. There is no history of mental health treatment contained in the medical evidence of record and the claimant has reported improvement in her symptoms with medication. Additionally, the DDS physician[s'] opinions that the claimant's mental impairments are severe is inconsistent with the statement provided by the claimant's primary care provider that he had not recommended psychiatric care and that the claimant would have an adequate ability to complete basic activities of daily living, relate to others, and complete simple, routine tasks.

(Tr. 25-26) (internal citations omitted).

The ALJ's reasoning comports with the regulatory framework and is supported by the record. (See Tr. 533 (Dr. Derrick's opinion finding adequate attention and concentration and that Plaintiff could perform simple tasks), 630-80 (January 2016-November 2018 treatment notes from Dr. Derrick noting normal mental status examinations), 653 (June 2017 treatment note from Dr. Derrick indicating Lexapro has helped Plaintiff's anxiety), 747 (June 2019 treatment note stating Plaintiff reports no anxiety or depression), 942-65 (May 2019-February 2020 treatment notes from Dr. Derrick stating Plaintiff reports no anxiety or depression, indicating normal psychiatric findings on examination, and continuing Plaintiff on Xanax and Lexapro), 1071-80 (August 2020-January 2021 treatment notes from Dr. Derrick stating Plaintiff reports no anxiety or depression, indicating normal psychiatric findings on examination, and continuing Plaintiff on Xanax and Lexapro)).

Further, the ALJ identified only unskilled jobs at steps four and five, which is consistent with the opinions of Dr. Derrick and the state agency consultants that Plaintiff can perform simple tasks. (See Tr. 26.) Plaintiff has not identified a single irregular mental status examination or any indication in the record that her anxiety and depression are not well-controlled with medication and result in functional limitations not accounted for in the RFC and the ALJ's decision as a whole.

## B.      RFC and Subjective Symptom Analysis

Plaintiff asserts the ALJ failed to properly assess her RFC and subjective allegations of pain.[1] (Pl.'s Br. at 7-9, ECF No. 10 at 7-9.)  The Commissioner contends the ALJ reasonably found Plaintiff's subjective complaints were not entirely consistent with the record evidence and her RFC finding is supported by substantial evidence.  (Def.'s Br. at 13-20, ECF No. 12 at 13-20.)

A claimant's residual functional capacity is "the most [a claimant] can still do despite his limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Social Security Ruling 96-8p requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.  Further, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alteration and omission in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."  Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir.

---

[1] Although Plaintiff raises these issues as two separate claims, the analysis is intertwined so the court addresses them together.

2020).  Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion."  Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p.  Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated.  Mascio, 780 F.3d at 636-37.  The ALJ must "build an accurate and logical bridge from the evidence to his conclusions."  Monroe, 826 F.3d at 189.

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Id. (internal quotation omitted).  At the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work."  Id.  The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2017 WL 5180304, at *10.[2]  ALJs are further instructed to

> limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments.  In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather,

---

[2] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029.  See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016).  The ALJ's decision in this matter post-dates the effective date of SSR 16-3p.

our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id. at *11.

Further, "claims of disabling pain may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her pain." Craig, 76 F.3d at 595 (citations omitted) (alteration in original); see also Arakas v. Comm'r, 983 F.3d 83, 95-96 (4th Cir. 2020) (finding that the ALJ disregarded "longstanding precedent and the agency's own policy by improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective evidence substantiating her statements").  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [her] ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers."

Id.  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues the ALJ would have found a more restrictive RFC and therefore found her disabled had she "acknowledged" abnormal physical examination findings, that many of her appointments with Dr. Derrick were telehealth visits,[3] and Plaintiff's testimony that she needed to change positions frequently and lie down throughout the day and needed help performing basic activities of daily living.  (Pl.'s Br. at 7-9, ECF No. 10 at 7-9.)  Plaintiff does not explain how further consideration of this evidence would have altered the ALJ's analysis of her functional limitations, asserting only that it would have resulted in a finding that she could not perform any type of substantial gainful activity.  (See id., ECF No. 10 at 7-9.)  The court disagrees.

At her first hearing, Plaintiff testified her back and knee pain prevented her from standing for more than 20 minutes and sitting without moving for anywhere for more than 10 to 40 minutes.  (Tr. 72, 82.)  She explained that some days were worse than others and the pain was aggravated by movement.  (Tr. 82-83.)  Plaintiff also testified she experienced neck pain during cold weather and occasional hip pain.  (Tr. 84-85.)  She treated her pain with hydrocodone and rest.  (Tr. 75, 86.)  Plaintiff estimated she had to lie down, off and on throughout the day, for about five hours because of the pain.  (Tr. 87.)  Regarding activities of daily living, Plaintiff testified she dusted, washed dishes, cooked things that did not require her to stand for a long time, folded clothes,

---

[3]  Contrary to Plaintiff's contention, the ALJ did acknowledge that some of Plaintiff's appointments were telehealth visits.  (Tr. 24) (noting November 2020 appointment with back pain specialists and March 2021 appointment with Dr. Derrick were telehealth visits).

played games on the internet, sang in a choir at church, and sometimes volunteered at her kids'
school grading papers and making copies. (Tr. 78-81, 86.)

At her second hearing, Plaintiff stated her neck and back pain had gotten worse, she was
experiencing sciatica and neuropathy in her legs, and she could stand for only five minutes. (Tr.
43.) She also described worsened pain in her right knee that was also associated with sciatica and
neuropathy. (Tr. 44.) She was now taking Gabapentin and Flexeril but had not noticed an
improvement in her pain. (Tr. 44-45.) Plaintiff testified she could now only sit for about 10
minutes, was lying down more, and no longer did laundry, cooked, or cleaned. (Tr. 46.) She
testified her boyfriend and children helped with most of the household chores. (Id.) Plaintiff stated
her medications helped for maybe an hour, then wore off and left her too tired to do anything. (Tr.
48-49.)

The ALJ noted Plaintiff's allegation that chronic pain in her neck, shoulder, back, legs, and
right knee meant she could not stand for more than five minutes and found "evidence in the record
of impairments that could cause back and overall body pain" but that the evidence "fail[ed] to
document that her symptoms [were] as limiting as alleged." (Tr. 22.) In making this finding, the
ALJ considered Plaintiff's reports to her doctors of significant pain relief from medication, records
showing mostly normal physical examinations, imaging showing only mild degenerative changes,
and Plaintiff's reported activities of daily living. (Tr. 22-25.) The ALJ's explanation accurately
reflects the record evidence.

During the relevant period, Plaintiff regularly reported neck, back, and shoulder pain. Dr.
Derrick prescribed hydrocodone and, in 2018, referred Plaintiff for pain management. (Tr. 636
(referred to pain management for chronic back pain)). In November 2018, Dr. Derrick provided a
written opinion, stating simply that Plaintiff had scoliosis and spinal stenosis that was inoperable

and associated chronic pain and was therefore unable to hold gainful employment. (Tr. 625.) He further noted Plaintiff was "unable to stand or sit for prolonged periods of time." (Id.) However, Dr. Derrick consistently recorded normal physical examinations, including of the back and lower extremities, and noted Plaintiff ambulated normally and exhibited normal strength and tone and a normal gait. (See Tr. 630-31, 633, 635 (ambulating normally, reports normal activity level, moves all extremities well, no fatigue), 645, 655, 658-59, 662 (normal physical examination despite Plaintiff's reports of pain interfering with her sleep), 666, 670, 673-74 (normal physical examination despite Plaintiff's reports of back pain, joint pain, and myalgia), 748, 943 (ambulating normally, reports no difficulty walking, normal strength and tone), 946-47, 949, 951-52 (normal examination and Plaintiff reported no myalgia, pain, numbness, weakness, tingling, burning, or shooting pain and moved all extremities well)).

Diagnostic imaging showed evidence of well-healed previous surgeries, scoliosis, mild stenosis, degenerative changes, and mild arthritis. (Tr. 597 (June 2018 lumbar MRI),[4] 806-09 (January 2018 spinal x-rays), 932–36 (January 2020 spinal x-rays), 1056 (September 2020 spinal x-ray)).

Plaintiff's pain management treatment consisted of oral medication, steroid injections, topical creams, and home exercises. (See Tr. 695–742, 846–921.) Like Dr. Derrick, Plaintiff's pain management providers recorded mostly normal physical examinations. (See Tr. 696, 699, 702, 710, 815 (normal back and lower extremity exam, positive for shoulder pain), 819, 847 (normal except for limited lumbar range of motion due to pain and stiffness), 870 (normal except

---

[4] Although the MRI report indicated significant stenosis, Plaintiff's doctor opined that was an "over read" and the stenosis was "mild" and "certainly not severe." (Tr. 936.)

for tenderness to palpation over lumbar-sacral spine and right hip), 877, 883, 887, 893, 902 (normal

except knee tenderness and some pain with range of motion), 919, 936.)

Plaintiff reported that medication provided between 70 and 90 percent pain relief, allowed

her to be more functional and perform activities of daily living, and did not cause any side effects.

(See Tr. 695-97 (reporting 80-90% pain relief, no side effects, and noting Plaintiff is "able to be

more functional and continue to perform [her] activities of daily life" on medication), 698-700

(same), 701-03 (same), 709-11 (70-80% pain relief, no side effects), 717-19 (same), 720-23 (70-

80% pain relief, no side effects, injection provided 60% pain relief for a few weeks and improved

function), 726-28 (greater than 90% pain relief from medication, no side effects), 774-75 (Plaintiff

reports "current medication regimen provides reasonable pain control," "increased mobility," and

"help in performing activities of daily living," denies side effects), 785 (same), 789 (greater than

80% improvement in response to injection, ability to perform activities of daily living improved

with medication and injections, no side effects), 799 (same), 803 (same), 846-48 (80-90% pain

relief, no side effects), 853 (same), 868 (same), 874 (same), 885 (70-80% pain relief, no side

effects), 891 (same), 900 (80-90% pain relief from medication, no side effects, 80% improvement

after injection and improved function for four-to-six hours), 910 (70-80% pain relief from

medication, no side effects, 80% improvement after injection and improved function for one day),

917 (70-80% pain relief with medication, no side effects)).

Plaintiff consulted with a surgeon, Dr. Jeffery M. Reuben, who did not recommend surgery

for her back and advised Plaintiff to continue with a home exercise program and medication.  (Tr.

936.)

Plaintiff contends the ALJ failed to acknowledge treatment records showing irregular

physical examinations and that these records undercut the ALJ's reliance on Plaintiff's mostly

normal physical examinations.  (Pl.'s Br. at 8-9, ECF No. 10 at 8-9) (citing Tr. 525-27, 772-76, 783-804, 806-26, 846-921, 1061-68, 1087-1109)).  Plaintiff fails to explain how any irregular findings in these records translate to functional limitations or would otherwise alter the RFC analysis, and the court has reviewed the referenced treatment notes and does not find anything clearly remarkable.  (See, e.g., Tr. 535-37 (August 2017 treatment notes for shoulder pain listing mildly irregular findings on examination of Plaintiff's right arm), 772-76 (November 2017 treatment notes finding antalgic gait, painful lumbar facet range of motion, and tenderness to palpation over the facet joints and paraspinal region), 783-86 (October 2017 treatment notes, no physical exam recorded, positive drug screening for THC), 787-91 (September 2017 treatment notes finding antalgic gait, lumbar facet pain with range of motion, and tenderness to palpation over the facet joints and paraspinal region), 792-96 (August 2017 treatment notes finding antalgic gait, lumbar facet pain with range of motion, and tenderness to palpation over the facet joints and paraspinal region ), 797-804 (June 2017 treatment notes finding antalgic gait, normal sensation and strength, decreased lumbar range of motion and pain with lumbar facet joint loading, tenderness to palpation over facet joints and paraspinal region), 806-14 (imaging results that are discussed in the ALJ's decision), 815-18 (January 2018 treatment note finding Plaintiff was in no acute distress and exhibited shoulder pain but stable range of motion, motor, and sensory function in her back and legs), 819-22 (July 2017 treatment note finding Plaintiff in no acute distress with stable range of motion, motor and sensory function, and coordination in her back and all extremities), 823-26 (imaging results discussed in the ALJ's decision and notes that do not include a physical examination)).  These records comport with Plaintiff's testimony that her pain is worse some days than others.  But, "a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled."  Qantu v. Barnhart, 72 F. App'x 807, 811 (6th Cir. 2003).

Plaintiff also asserts the ALJ failed to consider her testimony that she had to lie down several times per day, change positions frequently, and needed help performing activities of daily living. (Pl.'s Br. at 7-8, ECF No. 10 at 7-8.)  These alleged limitations stem from Plaintiff's chronic pain.  While the ALJ did not explicitly consider each of these allegations, she did fully and properly assess the underlying symptom—pain.  Further, the ALJ evaluated Plaintiff's ability to stand in light of Plaintiff's testimony she could only stand for five minutes and Dr. Derrick's opinion she could not stand or sit for prolonged periods.  (Tr. 22-26.)  The ALJ found any allegation that Plaintiff could not stand for extended periods inconsistent with the record evidence of mostly unremarkable physical examinations and imaging and Plaintiff's own reports of up to 90 percent improvement with medication.  (Id.)

Here, the ALJ did not cherrypick evidence that supported her conclusion but included positive physical examination findings in her discussion.  (See Tr. 22-23 (noting decreased cervical spine range of motion, positive Spurling's test, paraspinal muscle spasm, decreased sensation, pain on extension and flexion, limited sacroiliac range of motion, and imaging showing degenerative spinal changes)).  The ALJ thus properly considered and resolved conflicting evidence and it is not within this court's purview to second-guess her decision.  See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]."); Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018) ("There were a number of conflicts in the evidence here, and we do not second guess the ALJ in resolving those conflicts.").

Thus, in accordance with the regulations, the ALJ considered the longitudinal medical record of Plaintiff's pain, along with her alleged symptoms, daily activities, treatment modalities, and effectiveness of those modalities and reasonably concluded Plaintiff's statements concerning

the severity of her symptoms were inconsistent with the other evidence.  (See Tr. 18-26); see also 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work . . . ."); SSR 16-3p, 2016 WL 1119029, at *5 ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.").  The ALJ complied with the regulatory framework and provided a logical explanation that permits meaningful judicial review.  Her RFC finding and subjective symptom analysis are supported by substantial evidence and remand is not warranted.

## C.    VE Testimony

Finally, Plaintiff asserts remand is warranted because there is an inconsistency between the VE's testimony and the ALJ's decision.  (Pl.'s Br. at 9, ECF No. 10 at 9.)  She alleges the VE's testimony concerning the number of available jobs in the national economy for each of the identified representative jobs does not match the numbers listed in the decision.  (Id.)  This is simply incorrect.  (Compare Tr. 54-55 (VE's testimony regarding job numbers) with Tr. 28 (ALJ's step five explanation)).

### ORDER

☒    **Affirmed.  Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☐    **Reversed and remanded pursuant to ☐ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐    **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

May 11, 2023                                           Paige J. Gossett
Columbia, South Carolina                     UNITED STATES MAGISTRATE JUDGE